## 15370

WESTBURY v. HESLEP & THOMASON CO. *ET AL.*

(18 S. E. (2d), 668)

September, 1941.

Mr. *J. D. Parler,* of St. George, *Messrs. Robinson & Robinson,* of Columbia, and *Mr. J. Bratton Davis,* of Columbia, of counsel, for appellant,

*Messrs. Mitchell & Horlbeck,* of Charleston, for respondents,

February 9, 1942.

The opinion of the Court was delivered by MR. ACTING ASSOCIATE JUSTICE E. H. HENDERSON.

F. K. Westbury was a carpenter, and was employed by the respondent Heslep & Thomason Company in the construction of a building near the city of Charleston. He sustained an injury by an accident arising out of and in the course of his employment. Upon reaching the hospital it was found that he had suffered a heart attack. Four days afterward he died.

The appellant, Mrs. Annie M. Westbury, is his widow and sole dependent. She filed a claim with the South Carolina Industrial Commission, and the matter came up for a hearing before Commissioner Isaac L. Hyatt. He found as a fact that the injury resulted in the death of Mr. Westbury, and ordered that compensation be paid to Mrs. Westbury at the

compensable rate of $25.00 per week for a period of 350 weeks, together with burial expenses and medical bills.

Upon review by the full commission, the original award was adopted and affirmed.

Appeal was taken to the Court of Common Pleas, and his Honor, Judge Wm. H. Grimball, held that there was no positive evidence of probative value which would lead to a reasonable inference that Westbury's accidental injury caused the heart attack which resulted in his death; and the award of the commission was reversed and set aside.

The province of the Courts of Common Pleas, upon appeals from awards of the Industrial Commission, is well settled by many decisions, and is very clearly set forth in the case of *Rudd v. Fairforest Finishing Company*, 189 S. C., 188, 200 S. E., 727, 728, where it is said: "It is a familiar formula that findings of fact by a Board or Commission on a claim under a Workmen's Compensation Act are conclusive; and the appellant court will not review such findings except to determine whether there is any evidence to support the award. It may reverse an award if there is an absence of any evidence to support it, but it is not a trier of facts. If the facts proved are capable as a matter of law of sustaining the inferences of fact drawn from them by the board, its findings are conclusive in the absence of fraud, and neither this Court nor the Court of Common Pleas is at liberty to interfere with them. This is but an application to Workmen's Compensation cases of the fundamental principle universal in Courts of law, that whether there is any competent evidence is for the Court to determine, but whether the evidence is sufficient is a question for the jury; the function of the commission being in that respect that of a jury in actions of law. While the findings of fact by the Industrial Commission will be upheld if there is any evidence on which it can rest, it must be founded on evidence, and cannot rest on surmise, conjecture or speculation."

The question, then, to be decided by us is, was there any evidence to support the finding of the commission that the death of Mr. Westbury proximately resulted from the accident?

On January 16, 1941, at about 3 o'clock in the afternoon, Mr. Westbury, who was sixty-seven years of age, was engaged in the work of planing and fitting window sashes at the building in course of construction. He was standing over a sash, planing an uneven spot, when his foot slipped and he fell upon the sash in such a manner that the lower part of his stomach, or solar plexus, struck the corner of it. It felt to him as if something had "popped" or had been "torn aloose" in his stomach. He soon straightened up, holding his stomach with his hands, groaning, and complaining of pain; and said to one nearby that he had hurt himself and was going to die.

A very short time after this Mr. Westbury left the place where he had been working, with his tools in his hand, going toward the door. He had reached a point near the door, about twenty-five feet from the place where he had been injured by the sash, when he fell to the floor in an unconscious condition. He was placed in an automobile and carried to the Roper Hospital.

Dr. F. G. Cain saw him as soon as he reached the hospital. He was pulseless and in a cold, clammy sweat, being practically unconscious. His blood pressure was only five points of heart force, too slight to be felt by a finger at his pulse. His condition was so serious that treatment was administered in the emergency room before he could be removed to a bed in the ward, as Dr. Cain feared that he would die if removed from the stretcher upon which he was lying.

After about forty-five minutes he had sufficiently improved to be taken to the ward. He remained practically unconscious for some time, but later in the afternoon was able to talk and to describe the accident. He said then, and several times afterward, that he was going to die. There were no marks of injury upon any part of his body. His heart at

first could hardly be heard beating, but after a time he had fairly good heart tone, and his blood pressure slowly came back to 170/85 millimeters.

The accident took place on Thursday. He remained at the hospital until the following Sunday morning, at which time he had apparently improved to such an extent that it was thought safe for him to be removed to his home near St. George. The next day, Monday, January 20, 1941, he died at about 4 o'clock in the morning.

Mrs. Westbury testified that her husband had never been sick in his life before this time and had never had a doctor with him but once, when he had chills and fever.

Dr. Cain stated that Mr. Westbury had a marked, generalized arteriosclerosis, or hardening of the arteries. His opinion was that he had an accident in the blood vessel system, and he diagnosed it as coronary occlusion, or thrombosis, although he did not use electrical tests, and no autopsy was performed. The medical treatment was such as is given a person with heart trouble. He described arteriosclerosis as a thickening of the arterial vessels, the heart having arteries which supply it just as other parts of the body have. When there is a diminution or lessening of the channel of the blood vessels because of the arterial thickening, what takes place in occlusion is that the blood becomes clotted upon one of these areas of thickness, shutting off the blood supply to that part of the heart which is beyond the point of obstruction. The severity of the attack depends upon whether the clot forms at the trunk of the arterial tree or in one of the branches. A clot in the trunk of the tree causes death.

His opinion was that coronary thrombosis does not have to be induced by a blow or a fall. It may occur while one is in bed asleep. He said that one could have coronary thrombosis without any exertion whatsoever, although it may be induced by excitement or by running to catch a street car. He stated that falling against a sash would not be a cause of coronary thrombosis. Any unusual experience undergone by a

man who is potentially liable to coronary thrombosis might have some effect on it, such as running, or acts of a similar nature. It is not necessary to have any such unusual experience to die of coronary thrombosis.

Dr. L. F. Behling testified that he was not the family physician of Mr. Westbury and did not treat him during his last illness. His opinion was that a man of sixty-seven years of age does not have as sound a heart as a young man, but that as a person grows older his heart is in a more weakened condition. He was present at the hearing and heard the testimony of the witness who described the accident, and gave it as his opinion that the fall upon the sash could have caused a shock, and the shock could have caused or brought on a heart attack. He stated that even though a man of sixty-seven years may have some defects in his heart, if such a fall had not occurred a heart attack would not necessarily have taken place in ordinary living.

He said that from his experience and practice as a physician a fall such as that described, occurring to a man of sixty-seven years of age, would very probably bring on a heart attack. It would possibly and probably be sufficient to cause death, in his opinion.

In reply to a question, "Doctor, the testimony that you have heard, relating to the injury of Mr. Westbury, will you tell us in your opinion what caused his death," he replied, "From what he said I think that the shock from the fall caused the heart attack which caused his death, that is my opinion."

He stated that a man of sixty-seven years could have a shock, a moderate attack, at a ball game. In his opinion the injury described by the witness as having been received by Mr. Westbury could cause his death. He said he did not know how severe the blow was, but in his opinion the shock from the fall could have caused the heart attack. It was possible and probable that Mr. Westbury received a blow severe enough to give him a shock to bring on a heart attack, as he

was sixty-seven years of age; that he did not say it did cause it, since he did not see him. In the course of his practice he has known many persons to have heart attacks without a fall, or without being induced by any external injury, such as becoming excited from an automobile accident. He stated that in ordinary living one would hardly have a heart attack. People sometimes have heart attacks without any known cause. Usually when a person has a heart attack he falls.

In our opinion there was some evidence to support the finding of the commission. It appears that Mr. Westbury had never had a heart attack before this time. There is a reasonable inference that the heart attack did not occur before his fall against the corner of the sash, for in that event he could hardly have straightened up so quickly. From his pain, and his statements that something had "popped" inside him, and that he was going to die, there was evidence that the blow was quite a severe one. There was testimony from which a reasonable inference could be drawn that the heart attack came on within only a few minutes after his fall upon the sash. This could be inferred from the evidence of the witnesses as to the time of day when he sustained the accident, when he fell near the door, and when he reached the hospital. There was evidence that when the witness who saw the accident returned, after a very few minutes, Westbury had already been taken to the hospital.

The two physicians agree that a heart attack may be induced by exictement or by an unusual exertion or experience.

Dr. Behling did not see the accident, and did not treat the injured man, and so could only base his testimony on opinion. He stated positively that in his opinion the shock from the fall upon the sash caused the heart attack.

The evidence here as to a causal connection between the accidental injury and the heart attack is quite different from the testimony in the case of *Baker v. Graniteville Company*, 197 S. C., 21, 14 S. E. (2d), 367. In that case Baker sus-

tained an injury to his arm near the elbow, and died eleven days later of erysipelas. That is a disease due almost invariably to infection by bacteria, which always enter the skin through an abrasion. Baker's finger and thumb had been gaffed by the spur of a fighting cock at least two weeks before the accident, and his hand and arm had already become badly infected. No abrasion of the skin near the elbow could be seen, and there was no bruised area or discoloration at that point as a result of the accidental blow. Three doctors testified positively that in their opinion the infection entered the skin through the open sores on Baker's fingers. The striking difference between the testimony of the other doctor and the evidence of Dr. Behling in the instant case is that Dr. Behling, after describing the possible results of the fall, gave his clear opinion, based upon hearing the eyewitness, that the shock from the fall caused the heart attack. No physician, in the Baker case, testified that in his opinion the blow near the elbow caused the erysipelas which resulted in death.

The case of *Green v. City of Bennettsville*, 197 S. C., 313, 15 S. E. (2d), 334, is more like the present one. Mr. Green, a policeman sixty-eight years of age, was assisting in the arrest of a man. He was thrown to the ground, and used great exertion in completing the arrest. He died immediately afterward from a strain on his heart, resulting directly from over exertion. A physician stated that Mr. Green had been under his care for several weeks, suffering from myocarditis, or a weakening of the heart muscles. He saw him five days before his death. He testified that in his opinion, after hearing the testimony of the witnesses, the death was brought about by over exertion, and sudden heavy duty on the weakened heart muscles. The city contended that the death resulted from a diseased heart, and not from an accident; but it was determined by this Court that there was evidence supporting the finding of the commission that the death was the result of an accident.

In the case now before us, our conclusion that there was some substantial evidence to support the finding of the commission that the accidental injury resulted in Mr. Westbury's death brings us to the limit of the inquiry the Courts are permitted to make; the sufficiency of the evidence being a matter solely for the determination of the commission.

Accordingly, the judgment of the Circuit Court is reversed, and the award of the Industrial Commission is affirmed, total compensation not to exceed $6,000.00.

Mr. Chief Justice Bonham and Messrs. Associate Justices Baker, Fishburne and Stukes concur.