16671

RALEY v. CITY OF CAMDEN

(72 S. E. (2d) 572)

304

*Messrs. Savage & Marion* and *Harold W. Funderburk,* of Camden, *for Appellant-Respondent,*

*Messrs. Savage & Marion* and *Harold W. Funderburk,* of Camden, *for Respondent-Appellant,*

*Messrs. Savage & Marion* and *Harold W. Funderburk,* of Camden, *for Appellant-Respondent, in reply,*

September 24, 1952.

FISHBURNE, Justice.

This is a Workmen's Compensation case. James R. Raley, the respondent-appellant, who is the claimant, will herein be referred to as employee or claimant. The City of Camden, appellant-respondent, will generally be referred to as the employer.

The claimant, a man forty-seven years of age, had been an employee of the City of Camden for about nineteen years, —first as a police officer, then as tax collector, and finally as Commissioner of streets. For three or four years prior to December 28, 1948, while serving as Commissioner, he suffered from high blood pressure. Prior to August, 1948, his

duties had been solely of a supervisory nature, with about thirty or thirty-five city employees under his direction and control. He performed no manual work of any kind in connection with his employment, and on account of his physical condition, was not expected to perform any. The claimant was subject to the authority of the mayor of the City of Camden, who in his testimony before the Single Commissioner, stated that he was well aware of the claimant's physical condition and permitted him to take rest periods during the lunch hour when necessary.

In August, 1948, the employer adopted a new form of government, which is referred to as the City Manager Plan. The newly appointed City Manager assumed full control of all municipal employees, with the power by virtue of his office, to hire and discharge. Within a month after he assumed his duties he required the claimant, over his protest, to do manual labor to which he was unaccustomed, and work longer hours. The claimant advised the City Manager of his heart condition, and requested that he be allowed to continue his rest periods in accordance with his doctor's instructions. This request was denied, and he was threatened with discharge if he violated the mandate of the City Manager. In order to hold his job, he continued to work as instructed, and he was subjected to unusual strain and physical exertion during his working hours.

The claimant was a man of highly nervous nature, and on the morning of December 28, 1948, he was called from his home much sooner than his regular work period began, and ordered by the City Manager to personally mark the streets so that new parking lines might be painted. This required a great deal of stooping and bending. After this was done, the City Manager directed him to go to the park, a short distance away, where claimant was told to move some posts approximately eight or ten feet long and weighing between thirty-five and forty pounds each. He did this, and while lifting the posts, which were used to mark the boundaries of the walkways in the park, he became dizzy and

"turned blind". When he recovered from this fainting spell, he was able to walk across the street to where his doctor's office happened to be located, and was there given a medical examination. When he left the doctor's office he went home and to bed, as directed by his physician. The next morning he went to the office of the City Manager and told him that on account of his health, he could no longer continue to do manual labor. Thereafter he remained in bed under the doctor's orders for about three months, after which he resigned as Commissioner of streets. He was kept on the city payroll during this period of illness.

Dr. Rhame, claimant's physician, testified fully and at length. He had known of claimant's heart condition for two or three years, had prescribed a rest, and later advised him to see a heart specialist in Charlotte, which he did. His trouble was diagnosed as chronic auricular fibrillation with moderate to severe hypertension, all of which, as we understand these terms, means a "skipping heart" and high blood pressure. The doctor stated that claimant's condition had progressively grown worse a few months before December 28, 1948, and he expressed the opinion that any heavy mental or physical strain would aggravate the condition. He further stated that the unusual and strenuous manual labor performed by claimant on the morning of December 28, 1948 aggravated his pre-existing heart condition, and brought on the attack which he suffered that day. Since the day of the alleged accident, while moving the heavy posts, claimant has been unable to do any work except of the lightest kind, but no physical labor.

The employer contended that claimant did not comply with Sections 7035-25 and 7035-26 of the Workmen's Compensation Act, providing that the occurrence of an accident should be reported within thirty days. However, there is much testimony to the effect that the proper city officials knew of the accident, and that the city manager himself visited the claimant at his home while he was still in bed; and was definitely told by claimant's wife that he (the City

Manager) and through him, the city, were responsible for claimant's condition.

Claimant testified that he did not file a written claim because the tension which permeated the new form of government, and the personal disagreements between him and the City Manager, were such that he was afraid of losing his job.

For several months prior to December 28, 1948, numerous city employees who knew of the serious heart condition of claimant, spoke to the City Manager on his behalf, requesting that he be allowed to execute his duties without having to perform manual labor. The mayor of the City of Camden, who retired from office in the year 1948,—prior to the alleged accident,—knew, as stated, the physical condition of claimant. He testified that as commissioner of streets, claimant fully and satisfactorily discharged his duties without the necessity of physical labor on his part.

Claimant testified that the sudden illness which overcame him on December 28, 1948, while attempting to perform the unusual and heavy work of lifting and moving the posts under the direction of the City Manager, was the first attack of its kind he had ever suffered; and that this was directly precipitated by the undue exertion, to which he was not accustomed. As stated, Dr. Rhame expressed the same opinion.

The Single Commissioner after finding the foregoing facts, which in our opinion are fully sustained by the testimony, adopted the opinion of Dr. Rhame, and concluded his report with:

"It is the opinion and conclusion of this Commissioner that the defendant had sufficient knowledge of the accident sustained by the claimant although no written notice was given and that the defendant has not been prejudiced thereby; and, the claimant's claim for compensation was filed with the Commission within the statutory period.

"It is also the opinion and conclusion of this Commissioner that the proper city officials knew of the claimant's condition prior to his accident and permitted him certain privileges which, when taken away, caused the claimant's present condition. That the claimant, because of his condition, was employed in a supervisory capacity only, until the time of the change in government and had never been required to do any manual labor; that the claimant had always performed his duties satisfactorily and no complaints had been registered. This was evidenced by the testimony of the city officials."

The Single Commissioner definitely found as a fact that the claimant sustained the injuries by accident arising out of and in the course of his employment which aggravated a pre-existing condition; and that claimant as a result of the injuries sustained on December 28, 1948, "is now and has been since the date of the accident, totally and permanently disabled." The employer was directed to pay the claimant at the compensable rate of $25.00 per week for total and permanent disability from the date of the accident, December 28, 1948, for a period not to exceed five hundred weeks, and the total amount of compensation not to exceed the sum of $6,000.00. The foregoing award was unanimously sustained by the full Commission. It held that the hearing Commissioner was correct in his Findings of Fact and Conclusions of Law.

On appeal to the circuit court, the decision of the Commission was affirmed in its findings that (1) Claimant suffered an injury by accident arising out of and in the course of his employment, and (2) that the Commission was correct in holding that the employer had sufficient notice of the accident and failed to show prejudice from lack of written notice.

The circuit court, however, disagreed with the Commission in failing to hold that the City of Camden was entitled to offset any salary payments made to claimant after De-

cember 28, 1948 against the compensation payments as awarded by the Commission. That court likewise concluded that the case should be remanded to the Commission to fix the degree of disability and determine the amount of compensation payable.

The claimant and the City have appealed from these respective adverse rulings.

We first consider the appeal of the employer. It is contended that the City received no proper notice of the alleged accident in compliance with Sections 7035-25 and 7035-26 of the Workmen's Compensation Act.

The cases of *Strawhorn v. J. A. Chapman Const. Co.,* 202 S. C. 43, 24 S. E. (2d) 116, and *Buggs v. U. S. Rubber Co.,* 201 S. C. 281, 22 S. E. (2d) 881 commit us to a contrary conclusion.

Appellant cites *Mintz v. Fiske-Carter Const. Co.,* 218 S. C. 409, 63 S. E. (2d) 50; *Harpe v. Kline Iron & Metal Works,* 219 S. C. 527, 66 S. E. (2d) 30; *Teigue v. Appleton Co.,* 221 S. C. 52, 68 S. E. (2d) 879. But the facts in these cases differentiate them from the case at bar. In those cases the Commission made no findings of reasonable excuse or absence of prejudice to the employer. However, in the case now before us, these jurisdictional findings were not only made by the hearing Commissioner, based upon competent evidence, but were considered and sustained by the full commission and by the circuit court. See Annotation, 145 A. L. R. 1263, 1289, 1293.

On appeal from the award of the Industrial Commission, the Circuit Court, and this Court, are limited in their inquiry to determine whether there was any competent evidence before the Commission to reasonably support its findings of fact, and whether such findings justified its legal conclusions and decisions. If the findings of fact of the Commission are supported by competent evidence, this court must sustain the Commission. But of course, any finding of fact by the Commission must be

founded upon evidence, and cannot rest on surmise, conjecture and speculation. *Windham v. City of Florence, S. C.,* 70 S. E. (2d) 553; *Willard v. Commissioners of Public Works,* 219 S. C. 477, 65 S. E. (2d) 874; *Smith v. Southern Builders,* 202 S. C. 88, 24 S. E. (2d) 109.

We will not undertake to restate or summarize the evidence contained in the record, to which we have already hereinabove referred. In our opinion, there is substantial evidence that the City of Camden through its proper officials had actual notice of the accident.

Nor do we agree with the contention that the employer suffered any prejudice. It is suggested by the City that it was prejudiced by being deprived of medical testimony of its own, and having to rely on evidence of physicians of claimant's choosing. It may reasonably be inferred that the City had actual notice of the accident within one month after its occurrence. The claim in this case was formally filed with the Commission about ten months after the accident. Certainly in that length of time the City had every opportunity to have the claimant examined by its own physicians, if it had desired to do so. This was not done, and it is rather late now for the contention to be made. The only witness offered by the employer was the City Clerk and Treasurer. The effect of this testimony is all in favor of the claimant.

It is argued by the City that the claimant suffered no accident within the meaning of the Workmen's Compensation Law, and that the heart disease which has disabled claimant from the date of the accident, December 28, 1948, is not the natural and unavoidable result of that accident.

We have held in many cases, that in order to obtain an award for any accidental injury resulting from aggravation of heart trouble, there must be a sudden, unusual exertion, violence or strain. *Green v. City of Bennettsville,* 197 S. C. 313, 15 S. E. (2d) 334; *Willis v. Aiken County,* 203 S. C. 96, 26 S. E. (2d) 313; *Sweatt v. Marl-*

*boro Cotton Mills,* 206 S. C. 476, 34 S. E. (2d) 762; *West-bury v. Heslep & Thomason Co.,* 199 S. C. 124, 18 S. E. (2d) 668.

The evidence is undisputed in this record, not only that the city officials of Camden well knew of claimant's heart condition, but the official immediately involved,—the City Manager—knew of it also. Nor can there be any question but that the claimant was directed and required by the City Manager to undertake the unusual exertion of marking the parking lines and moving the heavy posts. The medical testimony shows that this unaccustomed physical labor immediately resulted in a damaged heart, already diseased, which necessitated claimant's resignation.

In our opinion, the finding of the Commission is justified by the evidence that the employee underwent an unusual and unexpected strain in connection with his employment, which operated on his pre-existing heart condition in such a manner as to constitute an accidental injury under the Workmen's Compensation Act. *Sweatt v. Marlboro Cotton Mills,* 206 S. C. 476, 34 S. E. (2d) 762; *Hiers v. Brunson Const. Co.,* S. C., 70 S. E. (2d) 211.

A heart injury such as has been testified to here, when brought on by overexertion or strain in the course of work, is compensable, though a pre-existing pathology may have been a contributing factor.

The Commission found the claimant to be totally and permanently disabled as a result of the accident. The circuit court reversed this finding and remanded the case to the Commission to fix the amount of disability. The claimant appealed from this ruling. The uncontradicted testimony shows that the claimant is able to perform and has performed supervisory work since the termination of his employment with the City of Camden. He testified himself that from various odd jobs he made from $25.00 to $30.00 per month. And in our opinion, the circuit court was correct in

sending the case back to the Commission to determine the extent of disability, and to determine the amount of compensation payable.

We also think that the circuit court was correct in remanding the case to the Commission to determine the amount paid by the employer subsequent to the accident, so that such amount may be credited on the award.

Judgment affirmed.

BAKER, C. J., TAYLOR and OXNER, JJ., and E. H. HENDERSON, Acting Associate Justice, concur.