17030

CURTIS COLVIN, Respondent, v. E. I. DU PONT DE NEMOURS
COMPANY *ET AL.,* Appellants

(88 S. E. (2d) 581)

*Messrs. Whaley & McCutchen* and *Hoover C. Blanton,*
of Columbia, *for Appellants,*

466

*Messrs. Brown, Jefferies & Mazursky,* of Barnwell, *for Respondent,*

July 13, 1955.

Stukes, Justice.

Respondent, who is of limited education and unskilled, was employed as a messenger. He was formerly physically sound and was examined by the medical department of the employer before his last employment. He testified that on May 13, 1953, while at work carrying a load of mail from one building to another he had to pass through heavy, double, fire-protection doors which were kept closed by hydraulic pressure. He said that he pushed one door open and, quoting from his testimony, "then when I retch and I got the other door, I pushed. That's when it happened. See I thought—just like a knife jobbing there and I thought I'd

had a heart attack." He further testified that he strained; was in a hurry and "shoved pretty hard to get in the door."

Opposing counsel differ as to the meaning of the unusual word "retch". For claimant it is contended that it was intended for "strained." Webster includes in the definitions of the word, quoting, "to reach; extend; stretch, expand", which is said to be dialect and obsolete. Merriam's Unabridged Edition, 1939. It is apparent from the immediate context and from claimant's other testimony that he meant to say that he stretched and strained in order to push open the second heavy door, in which he was handicapped by the employment of one of his arms in the carrying of his burden.

Claimant delivered the mail in the building which he was entering and then in about fifteen minutes, still suffering, he went to the employer's medical building where first aid facilities were maintained. He and the nurse on duty thought that his pain was caused by gas, for which he was given medicine. He tried to continue at work but soon had to go back to the first aid station and was sent to a doctor who examined him with $x$-ray, determined that he had a collapsed lung and referred him to his family physician for hospitalization. He went at once to his private physician who placed him in a hospital where he remained for fifteen days and afterward at home about the same time. Then he returned to his employment and was put on light duty with the requirement that he should not lift more in weight than fifteen pounds. Formerly in that employment he had lifted up to one hundred pounds. About six months later the employment was terminated by the employer, since which claimant has not worked. The lift load limitation was put upon him by the medical department of his employer. He testified that he is a common laborer, fitted only for manual labor which it is impossible for him to perform in his present condition.

The Industrial Commission awarded claimant workmen's compensation for permanent, total disability which was affirmed by the court. The employer and its insurance car-

rier have appealed upon the grounds that there was no injury by accident which arose out of and in the course of the employment, and that claimant is not totally and permanently disabled.

Whether there was an accident within the terms of the Compensation Act, Code 1952, § 72-1 *et seq.,* is a question of fact for determination by the Commission, and its conclusion will not be reversed by the court if there was any competent evidence to sustain it. Enough of claimant's undisputed testimony concerning the circumstances of his injury has been stated to raise an inference of injury by accident. His medical witnesses gave as their opinions that the collapse of the lung resulted from the strain which claimant described.

In *Hiers v. Brunson Construction Co.,* 221 S. C. 212, 70 S. E. (2d) 211, 220, in which award of compensation for death resulting from work-occasioned exposure to the elements was affirmed, the following was quoted with approval from 58 Am. Jur. 704, Workmen's Compensation, Sec. 195 : " 'The term "injury" as used in the phrases "personal injury or death accidentally sustained", "injury by accident", "injury proximately caused by accident", and similar expressions, has been construed to mean not only an injury the means or cause of which is an accident, but also an injury which is itself an accident; that is, an injury occurring unexpectedly from the operation of internal or subjective conditions, without the prior occurrence of any external event of an accidental character. As stated in some cases, an injury, to be accidental, need not have been created by wound or external violence.' " To that may be added from Sec. 196 of the same text, which further defines the term "accident": "It is generally construed as meaning an occurrence which is neither expected, designed, nor intentionally caused by the workmen * * *. It has been stated that an injury is unexpected, so as to bring it within the category of 'accident' * *.* if the workman did not intend

or expect that it would result on the particular occasion from what he was doing."

It was also said in the *Hiers case* that in the majority of jurisdictions no slip, fall or other fortuitous event or accident in (as?) the cause of the injury is required; the unexpected result or industrial injury is itself considered the compensable accident, citing 4 Schneider's Workmen's Compensation, Perm. Ed., 385, and footnote.

Also pertinent here, as it was in the *Hiers case,* is *Layton v. Hammond-Brown-Jennings Co.,* 190 S. C. 425, 3 S. E. (2d) 492, 495, It upheld an award of compensation for disability from hernia which resulted from lifting by claimant in moving laundry heaters which weighed about 60 pounds. The following is quoted from the opinion: "When respondent's injury occurred he was lifting a heater off the pile or stack of heaters just like he had lifted the others —in the usual manner. He did not strike himself in any way, he did not slip, his foot did not slip and he did not stumble nor fall. There was no untoward happening. He was not conscious of any strain. However, from the circumstances related, it is a reasonable inference that there was a strain." It was held that the words "by accident", and "an accident," as used in our Compensation Act, and the words "accidental means," as used in insurance policies, are synonymous; and the following was quoted with approval from *Goethe v. New York Life Ins. Co.,* 183 S. C. 199, 217, 190 S. E. 451, 458:

" 'The rule clearly deducible from the overwhelming weight of authority is that, when injury or death follows or results from a voluntary act of the insured, and the act is one which is not manifestly dangerous, but which is ordinarily done or performed without serious consequences to the doer, such result is caused by accidental means. This is nowhere better stated than by Sanborn, J., in *Western Commercial Travelers' Ass'n v. Smith,* 85 F. 401, 405, 29 C. C. A. 223, 56 U. S. App. ²93, 40 L. R. A. 653, where he says: "An effect which do͟e͟s not ordinarily follow and

cannot be reasonably anticipated from the use of those means, an effect which the actor did not intend to produce and * * * cannot be charged with the design of producing, * * * is produced by accidental means." ' "

In *Cole's Next of Kin v. Anderson Cotton Mills,* 191 S. C. 458, 4 S. E. (2d) 908, award was sustained for injury within claimant's shoulder which came while he was engaged in his usual employment in tightening nuts with a wrench and he was afterward found to be suffering from osteomyelitis. He was operated on, developed pneumonia and died. Similarly in *Young v. Sonoco Products Co.,* 210 S. C. 146, 41 S. E. (2d) 860, internal effect occurred in claimant's elbow while she was engaged in her usual work, and award of compensation for resulting disability was affirmed.

Appellants cite *Burnett v. Appleton Co.,* 208 S. C. 53, 37 S. E. (2d) 269; *Fleming v. Appleton Co.,* 214 S. C. 81, 51 S. E. (2d) 363; *Miller v. Springs Cotton Mills,* 225 S. C. 326, 82 S. E. (2d) 458; and *Price v. B. F. Shaw Co.,* 224 S. C. 89, 77 S. E. (2d) 491, which will be briefly, but we think satisfactorily, differentiated from the instant case.

In the *Burnett case* the Industrial Commission, the fact-finding body, found that there was no accident which was affirmed because there was competent evidence to sustain the conclusion. In *Fleming's case* claimant's disability was found to have resulted, according to the uncontradicted medical testimony, from a neurosis or mental condition which was not related to the work. In the *Miller case* claimant was rising from her seat in the cafeteria of her employer, where she had eaten, when an internal failure of the function of her knee caused her to almost fall. It was concluded under the evidence that the internal failure of claimant's knee caused her near-fall rather than that the near-fall caused the injury to her knee. The *Price case* was a claim for compensation for death which resulted from a heart attack which was suffered by the deceased while at

his usual work. By divided opinions the court held that in heart cases, to be compensable, the attack must have been induced by unusual strain or exertion at work; moreover, there was proof that the workman had long suffered from heart disease, which distinguishes that case from this; here claimant had no former trouble with his lung.

Apparently this is the first compensation case to arise in this State involving the collapse of the lung of an employee while at work. Incidentally, the medical term is pneumothorax. Appellants cite such a case from Arizona, *Rowe v. Goldberg Film Delivery Lines, Inc.,* 50 Ariz. 349, 72 P. (2d) 432. In that case the court affirmed the factual findings of the Commission that there was no compensable accident. Here we are faced with a contrary conclusion of the fact-finding body. Moreover, that court appears not to follow our definition of an accident, which latter is illustrated by the decisions first cited *supra.*

To the contrary, respondent's brief contains several decisions from other courts which involved pneumothorax and awards of compensation for the resulting disabilities were affirmed. In *Texas Employers Ins. Ass'n v. Grimes,* Tex. Civ. App., 186 S. W. (2d) 280, claimant, a used car salesman, pushed a car on the street and felt a severe pain in the region of his lung but kept at work; he pushed another car late in the afternoon and suffered more severe pain. The medical diagnosis was instantaneous pneumothorax caused by strain, and the court reversed the Industrial Accident Board and awarded compensation for permanent, total disability. In *Dortch v. Louisiana Central Lumber Co.,* La. App. 1947, 30 So. (2d) 792, 795, claimant was pulling one end of a crosscut saw, cutting a large log; when the saw ran heavily and pinched he pulled the saw toward himself, using considerable effort and suffered pain in his shoulder downward. It developed that he had a pneumothorax, but not spontaneous and several days passed before there was complete deflation. Award of compensation for total disability was affirmed and the court said: "We are satis-

fied * * * that * * * plaintiff's disability to perform work requiring strenuous physical effort has been total. This is the only kind of work he is competent to perform." In *D'Amico v. General Electric Supply Co.,* 1952, 22 N. J. Super. 199, 91 A. (2d) 612; *Id.,* 1951, 16 N. J. Super. 472, 84 A. (2d) 769, claimant suffered sudden pain in the lung area when he was lifting boxes. Compensation for permanent partial disability was awarded and affirmed. There was difference in the opinions of the medical witnesses as to whether it was a case of spontaneous pneumothorax or whether it was caused by rupture of a preexisting cyst.

*Southern Stevedoring Co. v. Henderson,* 5 Cir., 1949, 175 F. (2d) 863, 866, is a valuable authority and the opinion cites many supporting cases, mostly federal. The employee died from the' effect of climbing a thirty foot perpendicular ladder from the hold of a ship. We quote from the opinion:

"The Act gives compensation for accidental injury or death arising out of and in the course of employment; * * * and the source of the force producing the injury need not be external. * * * Even in those states where an injury is defined in the compensation law as 'injury by violence to physical structure of the body' or by similar definition, the courts have considered collapses from internal causes resulting from strain or exertion as compensable." (Citing cases from Pennsylvania, Washington and Louisiana.)

The court further quoted the following with reference to accidental injury: " 'It is enough if something unexpectedly goes wrong within the human frame,' which is as true of an employee subject to physical infirmities as to one who is well and strong."

We are satisfied that there was competent evidence in the case at bar to sustain the finding of the Commission that there was an injury by accident, within the terms of the Compensation Act.

Upon the second question, which relates to the extent and permanency of claimant's disability, he was supported in his claim by the testimony of two physicians who agreed in their professional opinions that the collapse of claimant's lung was caused by the strain of opening the heavy, double doors, and that manual labor and lifting would be apt to cause a recurrence, from which they concluded that claimant, a laborer, is totally and permanently disabled. These physicians had the benefit of the x-ray pictures which had been taken of claimant's chest at the time of the injury and afterward when he was hospitalized.

The physician who was in the employ of the employer and had specialized in industrial medicine testified, and produced a chest x-ray of claimant which was made some months before his injury. It was normal. And he produced the picture which was taken on the day of the accident and showed the total collapse of claimant's left lung; and another made three months later which showed that the formerly collapsed lung was fully expanded. This doctor testified that the fifteen pounds lift limit was placed on claimant when he returned to work after the injury as a precautionary measure, and that in such cases there is a probability of a recurrence. He further agreed with the physicians who testified for claimant that, in effect, claimant as a manual laborer is totally disabled.

Again, as with reference to the first question, the extent of an injured workman's disability is a question of fact for determination by the Commission and will not be reversed if it is supported by competent evidence. Appellants have not advanced in evidence or argument any lesser percentage than total which they think is the extent of respondent's disability; and the unanimous medical opinion is that he is disabled by reason of his predisposition to recurring pneumothorax. That is why the employer imposed the lift load limit after the accident. Referring again to the evidence of the medical witness for appellants, he testified as follows on cross-examination:

"Q. * * * If he's (respondent is) a manual laborer not qualified for anything else except heavy lifting or manual labor, so far as you are concerned, he'd be totally disabled? A. I would not employ him."

The medical testimony, upon which the case largely depends, thus substantiates the conclusion that claimant is totally and permanently disabled to pursue his occupation of a manual laborer. Disability is a relative term and must be related to the occupation of the claimant. Here he is disabled to perform common labor and cannot obtain employment at such; and he is not qualified by training or experience for any other.

We quote again from the Louisiana case cited *supra*, *Dortch v. Louisiana Central Lumber Co.*, La. App., 30 So. (2d) 792, 795, where it was said of the claimant there, who had suffered a pneumothorax by compensable accident: "Plaintiff's disability to perform work requiring strenuous physical effort has been total. This is the only kind of work he is competent to perform."

" 'Total disability' in compensation law is not to be interpreted literally as utter and abject helplessness. Evidence that claimant has been able to earn occasional wages or perform certain kinds of gainful work does not necessarily rule out a finding of total disability nor require that it be reduced to partial * * * The rule followed by most modern Courts has been well summarized by Justice Matson of the Minnesota Supreme Court in the following language: 'An employee who is so injured that he can perform no services other than those which are so limited in quality, dependability, or quantity that a reasonably stable market for them does not exist, may well be classified as totally disabled.' *Lee v. Minneapolis St. Ry. Co.*, 230 Minn. 315, 41 N. W. (2d) 433, 437." Larson on Workmen's Compensation Law, Section 57.51.

In *Texas Indemnity Ins. Co. v. Bonner*, Tex. Civ. App., 228 S. W. (2d) 348, an iceman who as a result of a rup-

tured disc could do no lifting was allowed permanent disability compensation although he had held odd jobs parking cars at a garage, helping his wife do laundry work and doing radio repair work.

We do not need in this case to go as far as the two last cited authorities because the respondent is unable to follow his occupation as a laborer and is unemployed; and the result here does not impinge upon the rule of our statute and decisions that, quoting, "the disability is to be measured by the employee's capacity or incapacity to earn the wages which he was receiving at the time of his injury. Loss of earning capacity is the criterion." *Keeter v. Clifton Mfg. Co.*, 225 S. C. 389, 82 S. E. (2d) 520, 522.

The appellant employer contends that claimant is not disabled, yet it put upon him the low lift limit, which patently incapacitates him to work as a laborer, for which he is only qualified; and they discharged him about six months after his injury. In these circumstances, it hardly lies in the mouth of the employer to make such contention, and it must be overruled.

Affirmed.

TAYLOR, OXNER and LEGGE, JJ., and JOSEPH R. MOSS, A. A. J., concur.