## 17554

Mrs. Kate SIMS, Laddie Sims and Frankie Sims, Respondents, v.
S. C. STATE COMMISSION OF FORESTRY and State
Workmen's Compensation Fund, Appellants

(109 S. E. (2d) 701)

*Messrs. Daniel R. McLeod, Attorney General,* of Colum-
bia, and *Gregory & Gregory,* of Lancaster, *for Appellants,*

*Messrs. Williams & Parler,* of Lancaster *for Respondents,*

*Messrs. Daniel R. McLeod, Attorney General,* of Columbia, and *Gregory & Gregory,* of Lancaster, *for Appellants,* in *reply,*

July 14, 1959.

STUKES, Chief Justice.

I respectfully dissent from the opinion of Mr. Justice Taylor because I think this court is very definitely com-

mitted to the unusual exertion or strain rule in heart cases arising under the workmen's compensation law by *Price v. B. F. Shaw Co.,* 224 S. C. 89, 77 S. E. (2d) 491, 494, and other decisions. I unsuccessfully dissented in the cited case, but I think that consistency and *stare decisis* require the court to follow it. I can see no ground of distinction between the cases. There it was said that the employee at the time of his fatal heart attack, quoting from the opinion, "was engaged in his usual work and was not subjected to any unusual strain." Here climbing up and down the tower steps was not unusual in decedent's work; it was usual and the very thing he had been doing for sixteen years and until he became ill. How can it be said that it was an unusual exertion or strain?

It was said by the unanimous court in *Colvin v. E. I. du Pont de Nemours Co.,* 227 S. C. 465, 88 S. E. (2d) 581, 583, of the *Price case* that it, quoting, "held that in heart cases, to be compensable, the attack must have been induced by unusual strain or exertion at work; moreover, there was proof that the workman had long suffered from heart disease." The latter is the case here.

The *Price case* was cited with apparent approval, certainly not disapproval, in *Ricker v. Village Management Corp.,* 231 S. C. 47, 97 S. E. (2d) 83, 87, although unusual exertion and strain were found to exist and award was affirmed. There was no known prior heart disease in that case as there was in the *Price case* and as in the instant case. It was said in the *Ricker case,* quoting from the opinion: "Under the unusual exertion or strain rule to which this Court has consistently adhered, there is evidence to sustain" the award.

The opinion of Mr. Justice Taylor concludes that climbing the tower was not normally unusual but became an act of unusual exertion and strain in the case of decedent because of his then physical condition. That is exactly what was advocated in the dissent in the *Price case, supra* [224 S. C. 89, 77 S. E. (2d) 496], in these words: "It was over-exertion

(the carrying of heavy 'skids') for the employee in his weakened heart condition although it was part of his usual duties"; but it was rejected by the court.

I think the *Price case* is the settled law of heart cases in this jurisdiction and that the authority of it should be followed unless and until it is expressly overruled. That would require that this case be reversed, which I would do.

The majority of the Justices having concurred in this opinion, it is the judgment of this Court and the judgment of the lower Court is

Reversed.

OXNER, LEGGE and MOSS, JJ., concur.

TAYLOR, Justice (dissenting).

I regret that I am unable to agree with the Majority Opinion in this case and must therefore dissent because the uncontradicted evidence shows that at the time of decedent's fatal heart attack climbing the fire tower was not a part of his usual duties and had been forbidden by his superior unless necessary as it was an act requiring unusual exertion.

This appeal comes from the Court of Common Pleas for Lancaster County where the Honorable C. Bruce Littlejohn by way of Order, dated October 2, 1958, affirmed an award of the South Carolina Industrial Commission to Mrs. Kate Sims, widow, and Frankie Sims and Laddie Sims, the minor children of deceased, Amasa Sims, Respondents' intestate, who died of a heart attack September 12, 1956.

The deceased, a fire tower watchman for the S. C. Forestry Commission for approximately 16 years, was a man approximately 46 years of age and weighed in the neighborhood of 280 pounds. Part of his regular duty required that he climb the wooden steps of a fire tower, which was approximately 100 feet high, both morning and afternoon for the purpose of observing any forest fires which might occur. In May or June of 1956, by reason of his suffering from high blood pressure and a possible coronary condition, he was under the

care of a doctor and was ordered hospitalized, where he was treated for hypertension and an attempt was made to reduce his weight. He left the hospital on August 7, and in a limited way returned to work. The fire tower and his home nearby were furnished by the Forestry Commission and both were equipped with radios in order that the other rangers throughout the district might be contacted. From August 7, the date of his discharge from the hospital until the date of his death, September 12, 1956, he remained at home and received his reports over the radio outlet located in his house and made no attempt to climb the tower.

On the date of his death, he carried some cotton to the gin in the early morning and about 10 A. M. climbed the fire tower to the top and stayed until shortly after noon. When he came down for lunch, he appeared to be tired and nervous, ate his lunch, lay down and rested and took the medicine prescribed by his doctor. At approximately 2 o'clock he again climbed the tower but remained there only about an hour rather than the three hours usual duration. His wife noticed that while descending, he would hesitate on each landing and rest before descending further. Upon reaching home, she noticed that he was nervous and pale and seemed to be suffering from overexertion. However, he ate his supper and made a short errand to the neighborhood store which took 15 or 20 minutes. Upon his return, he complained of being tired and exhausted and went to bed where he was found shortly thereafter dead. The attending physician testified that death was due to a coronary thrombosis.

At the Hearing before the Commissioner, it was brought out in the testimony that Mr. Sims' state of health was well known to the other forest rangers, including Mr. Aaron Plyler, his immediate superior. Two doctors testified that they had treated and observed the deceased and that in their opinion the exertion of climbing the fire tower twice on the date of his death triggered the fatal attack of coronary thrombosis. One doctor described such act as being one requiring

supreme or maximum exertion. A portion of this testimony being:

"Q. Would you consider it an extreme exertion for a man in his condition? A. Well, one thing we also consider a test for anybody with a heart condition is going up a hill or climbing steps, and where they have pain doing that—I mean we consider that a supreme effort. I mean it's maximum exertion."

\* \* \*

"Q. Would you say in your opinion that there would definitely be a causal connection between the exertion and the triggering of the fatal attack?

"A. Yes, sir."

Appellants in substance now contend that there was no testimony upon which the Hearing Commissioner and the Majority Commission could base a finding of fact that deceased suffered unusual exertion and, therefore, no evidence that deceased suffered an accident within the contemplation of the Workmen's Compensation Act, Code 1952, § 72-1 et seq., it being their contention that the climbing of the tower twice each day for the purpose of observing forest fires was within the scope of his regular duties as a fire tower watchman; and, therefore, there is no evidence to bring this case within the rule in this State that in order to obtain an award for an accidental injury in a heart case, there must be some sudden, unusual exertion, violence or strain. *Raley v. City of Camden,* 222 S. C. 303, 72 S. E. (2d) 572; *Ricker v. Village Management Corp.,* 231 S. C. 47, 97 S. E. (2d) 83; *Price v. B. F. Shaw Co.,* 224 S. C. 89, 77 S. E. (2d) 491; *Radcliffe v. Southern Aviation School,* 209 S. C. 411, 40 S. E. (2d) 626; *Windham v. City of Florence,* 221 S. C. 350, 70 S. E. (2d) 553; *Branch v. Pacific Mills,* 205 S. C. 353, 32 S. E. (2d) 1.

Mr. Sims' duties were ordinarily to climb the tower twice daily as contended by Appellants; however, after his hospitalization for a heart condition, which was well known to the other forest rangers, Mr. Aaron Plyler, the ranger im-

mediately in charge, instructed Mr. Sims not to climb the tower unless necessary and not then unless he felt like climbing it; and Respondents' intestate was acting under these instructions at the time of death. A portion of the testimony of Mr. Aaron Plyler appears as follows:

"A. I'm a ranger in Lancaster County.

"Q. As ranger of Lancaster County was Mr. Sims under you? A. Yes, sir.

"Q. You knew that Mr. Sims had been sick and been in the hospital prior to his death? A. Yes, sir.

"Q. After he returned home from the hospital what instructions did you give him with reference to his duty there at the fire tower? A. I told him to take it easy and not climb the tower unless it was necessary or unless he felt like climbing it.

"Q. Mr. Plyler, just what are the duties of a tower warden or whatever you call him? A. Fire towerman?

"Q. Fire towerman like he was. A. To climb that tower and observe for fires.

"Q. That's all he had to do, just climb the tower? A. Well, he used the telephone and the radio and if it were necessary to report forest fires.

"Q. So on the day of his death if he did no more than climb the tower and down and talk over the radio then he didn't do anything other than his usual customary job in connection with the tower, did he? A. No, sir."

\* \* \*

"Q. Mr. Plyler, you say you told him not to go up there unless it was necessary and he felt like it? A. Yes, sir.

"Q. That's correct, isn't it? A. Yes, sir.

\* \* \*

"The Court: He was on his own instructions more or less?

"The Witness: Yes, sir.

"The Court: If he thought it was necessary why he went up there?

"The Witness: Yes, sir.

"The Court: If he didn't, why he didn't?

"The Witness: It was his duty to be in that tower any-time that the woods would burn, and he had certain times of the day at ten and two, possibly, that he had—was supposed to make reports over the radio.

"The Court: What were the hours that he was supposed to report on this particular day, on or about September 12, 1956?

"The Witness: Ten and two, sir.

"The Court: About ten and two?

"The Witness: Yes, sir.

"The Court: That was an order, a must, wasn't it? In carrying out the rules and regulations of the Forestry Commission?

"The Witness: Yes, sir."

It is apparent from the foregoing that ordinarily Mr. Sims would be required to climb the tower twice daily; but that subsequent to his release from the hospital, his duties had been changed; and he was no longer required to climb the tower at all unless it became necessary and if he felt physically able. Not having found it necessary, he had not climbed the tower since his hospitalization until the day of his death but made his radio contacts at 10 A. M. and 2 P. M. daily from his home instead of the tower.

The Forestry Commission lists fire hazards into five classes according to the weather, with number one being the kind of weather least conducive to forest fires and progressively until number five class represents the kind of weather during which fires are most likely to occur. On days when fire was most likely to occur, Mr. Plyler assigned another warden to tend the tower; but on days when fires were least likely to occur, no one was so assigned, and Mr. Sims made his reports from his home. Prior to the day in question, rain had fallen; and although there is no testimony to the effect that it rained on this day, it was classed as a Number One or a Low Class Fire Day and no arrangements were made by

Mr. Plyler for another warden or ranger to observe on this date as he did not consider it necessary.

The record is silent on why Mr. Sims found it necessary to climb the tower on this occasion as his lips are sealed, but it will not be assumed that deceased intentionally undertook to do something which he in reason knew would bring about his death. Such an act is not natural to a human being, and the law presumes that a man would not consciously bring about his own destruction especially when unnecessary. *Green v. City of Bennettsville,* 197 S. C. 313, 15 S. E. (2d) 334. It is reasonable to infer from the testimony that Mr. Sims deemed it necessary under the conditions to do what he did and having done so, suffered a heart attack early in the evening from which he died.

The heart cases, where it is usually required to show some special effort as a precipitating cause of the attack, stand in a class by themselves; but they do so because their generalized nature makes it difficult factually to attribute the attack to the work. In *Mills v. Monte Christi Corp.,* 10 N. J. Super. 162, 76 A. (2d) 839, and *Neylon v. Ford Motor Co.,* 13 N. J. Super, 56, 80 A. (2d) 235, 236, it is said:

"* * * these (heart) cases establish the requirement of proof of unusual strain or exertion in heart disease cases, grounded upon the judicially declared presumption that death from heart disease is ordinarily the result of natural physiological causes rather than trauma or particular effort * * *."

The Workmen's Compensation Act was adopted for the benefit of the employees and their dependents, and it should be liberally construed in order to accomplish this humane purpose. But liberal construction does not mean that the Act should be converted into a form of insurance. We have held in many cases, that in order to obtain an award for any accidental injury resulting from aggravation of heart trouble, there must be a sudden, unusual exertion, violence or strain. *Green v. City of Bennettsville, supra; Willis v. Aiken County,* 203 S. C. 96, 26 S. E. (2d) 313; *Sweatt v. Marlboro Cotton*

*Mills,* 206 S. C. 476, 34 S. E. (2d) 762; *Westbury v. Heslep & Thomason Co.,* 199 S. C. 124, 18 S. E. (2d) 668; *Raley v. City of Camden, supra.*

In every case decided by this Court involving benefits under the Workmen's Compensation Act resulting from heart conditions or other physiological bodily conditions in which award of benefits were adjudged, there was some unusual or extraordinary condition attached to the work environment or unusual exertion and strain in the performance of the work, or, of course, a definite traumatic injury; whereas in those cases in which this Court has denied compensation benefits there has been, in each instance, nothing unusual or extraordinary attached to the work environment, no unusual exertion or strain, and where death or disability would have inevitably resulted from the same cause whether the employee was at work or engaged in other pursuits. In this connection, see *Rivers v. V. P. Loftis Co.,* 214 S. C. 162, 51 S. E. (2d) 510; *Windham v. City of Florence, supra; Branch v. Pacific Mills, supra; Willard v. Commissioners of Public Works of City of Spartanburg,* 219 S. C. 477, 65 S. E. (2d) 874; *Price v. B. F. Shaw Co., supra.*

In instant case, the climbing of the tower, while part of his usual duties and not unusual or extraordinary under the deceased's working conditions prior to his heart attack and release from the hospital, became an act of unusual exertion and strain under the environment of his then employment as evidenced by his change of duties and the specific instructions of his immediate superior. Therefore, under the unusual exertion or strain rule to which this Court is committed, *Price v. B. F. Shaw Co., supra; Ricker v. Village Management Corp., supra,* there is evidence to sustain the award.

For the foregoing reasons, I am of opinion that the Order appealed from should be affirmed.