17675

James Clyde KEARSE, Respondent, v. SOUTH CAROLINA WILD-
LIFE RESOURCES DEPARTMENT, and the South Carolina
Workmen's Compensation Fund, Appellants

(115 S. E. (2d) 183)

*Messrs. Daniel R. McLeod, Attorney General,* and *Julian L. Johnson* and *David Aiken, Assistant Attorneys General,* of Columbia, *for Appellants,*

*Messrs. Kearse & Kemp,* of Bamberg, *for Respondent,*

July 1, 1960.

OXNER, Justice.

This is an appeal from an order of the Circuit Court affirming an award of compensation made by the Industrial Commission.

Claimant, James Clyde Kearse, who was employed by the South Carolina Wildlife Resources Department as a game warden, suffered a cerebral thrombosis on May 11, 1958, causing partial paralysis and total disability. He was then 63 years of age. The Industrial Commission found that the thrombosis was precipitated by unusually strenuous activity between May 5th and May 11, 1958, and constituted a compensable accident.

Kearse had been a game warden for approximately sixteen years. For a period of two or three weeks prior to his stroke the water in the Little Salkahatchie River was unusually high and there had been a great amount of fish trapping. He and other game wardens, working together, took extreme measures in trying to apprehend the violators. They drove themselves relentlessly, customarily meeting at the swamp each morning before daylight and not leaving until after dark, usually returning to their homes between 8:00 and 10:00 o'clock at night, thereby working between sixteen and eighteen hours a day.

Tuesday, May 6th, was an extremely strenuous day. Kearse along with three other game wardens went to the river that morning before daylight to a spot where a boat had been hidden by them the day before. After putting on hip boots, he and another game warden dragged the boat over cypress knees, logs, mud and water to the main stream, a distance of about fifty yards. While the other game warden held a flashlight, Kearse paddled the boat up the stream

about 300 yards. The two then got out and dragged it about 25 or 30 feet to another hiding place where they remained until five o'clock that afternoon when Kearse displayed symptoms of exhaustion and illness. The game wardens then returned to their respective homes. Kearse was unable to work the next day but returned to his job on the 8th and continued working until the 11th. Although he never fully recovered from the symptoms displayed on the 6th, there were several occasions afterward when he was subjected to extreme exertion, one of them being when the automobile had to be pushed a considerable distance over rough terrain to get it started. On Sunday, May 11th, the game wardens returned to the same area about daylight. Kearse remained in the car. Between 8:00 and 9:00 o'clock that morning the other game wardens attempted to contact him by radio but were unable to do so. One of them went back to the car and found him looking very pale and sick. He then returned home and suffered a stroke early that afternoon.

There is considerable conflict in the testimony as to Kearse's previous medical history. A physician at the Veterans Hospital in Columbia testified that he was a patient there for about a month during the early part of 1950 and was treated for a coronary thrombosis said to have been confirmed by the cardiograms. The records of that hospital disclose that he was then rated as being totally and permanently disabled and drew a pension from January 9, 1950 to February, 1951, at which time it was discontinued because his income exceeded the statutory limitations. On the other hand, two physicians of Bamberg County, where Kearse resided, testified that on several occasions he displayed symptoms of a heart attack but each time the cardiograms were negative with no indication of a thrombosis. It may be added that there is no evidence that he suffered any prolonged illness or lost any appreciable time from his work from 1950 until his stroke in 1958.

These physicians also disagreed as to whether there was any causal connection between Kearse's work as a game

warden and his present condition. Immediately after suffering the stroke on May 11th, he was taken to a hospital at Bamberg where he remained until June 16th. There he was treated by two local physicians who expressed the unqualified opinion that his stroke was brought about by the prolonged fatigue, tension and exertion connected with his work as game warden immediately preceding his illness. On June 16th he was taken to the Veterans Hospital in Columbia, where he remained until August 9th. A physician there testified that they found that he had an arteriosclerotic heart disease. He said that Kearse's condition both in 1950 and in 1958 was a manifestation of "a generalized vascular disorder, hardening of the arteries" and that basically in each instance the pathology was the same except the site of involvement was different. He declined to say that Kearse's activities as game warden precipitated his stroke, stating that that was a mere possibility.

Did Claimant suffer an injury by accident within the meaning of Section 72-14 of the 1952 Code? A determination of this question necessitates a review of the cases where disability or death of an employee results as a consequence of exertions in the performance of his duties. It is now well settled in this State that a coronary occlusion or thrombosis suffered by an employee constitutes a compensable "accident" if it is induced by unexpected strain or over-exertion in the performance of the duties of his employment or by unusual and extraordinary conditions in the employment. *Green v. City of Bennettsville,* 197 S. C. 313, 15 S. E. (2d) 334; *Willis v. Aiken County,* 203 S. C. 96, 26 S. E. (2d) 313; *Windham v. City of Florence,* 221 S. C. 350, 70 S. E. (2d) 553. This is true even though there is a preexisting pathology which may have been a contributing factor. *Sweatt v. Marlboro Cotton Mills,* 206 S. C. 476, 34 S. E. (2d) 762; *Raley v. City of Camden,* 222 S. C. 303, 72 S. E. (2d) 572. And the right to compensation is not affected by the fact that the unusual or excessive strain which precipitates the heart attack occurs while the

employee is performing work of the same general type as that in which he is regularly involved. *Sweatt v. Marlboro Cotton Mills, supra,* 206 S. C. 476, 34 S. E. (2d) 762; *Ricker v. Village Management Corporation,* 231 S. C. 47, 97 S. E. (2d) 83. The phrase "unusual or excessive strain" used in many of the cases, is not so limited in its meaning as to include only work of an entirely different character from that customarily done.

But it is equally clear under our decisions that if ██ a heart attack results a consequence of the ordinary exertion that is required in the performance of the duties of the employment in the ordinary and usual manner, and without any outward untoward event, it is not compensable as an accident. *Rivers v. V. P. Loftis Co.,* 214 S. C. 162, 51 S. E. (2d) 510; *Sims v. South Carolina State Commission of Forestry,* 235 S. C. 1, 109 S. E. (2d) 701. Moreover, the fact that due to a weakened heart condition the exertion required for the ordinary performance of the work is too great for the particular employee who undertakes to perform it, does not make it a compensable accident. *Price v. B. F. Shaw Co.,* 224 S. C. 89, 77 S. E. (2d) 495; *Sims v. South Carolina State Commission of Forestry, supra.* In the *Price case,* the Court said: "In every case decided by this Court, involving benefits under the Workmen's Compensation Act resulting from heart conditions or other physiological bodily conditions in which award of benefits were adjudged, there was some unusual or extraordinary condition attached to the work environment, or unusual exertion and strain in the performance of the work, or of course, a definite traumatic injury; whereas in those cases in which this Court has denied compensation benefits there has been, in each instance, nothing unusual or extraordinary attached to the work environment, no unusual exertion or strain, and where death or disability would have inevitably resulted from the same cause whether the employee was at work or engaged in other pursuits."

Most of the courts adopting the doctrine of "unusual exertion or strain" in heart cases have applied the same rules to cases where compensation was sought for disability or death resulting from cerebral hemorrhage, apoplexy or other injury to the blood vessels. *Lewter v. Abercrombie Enterprises,* 240 N. C. 399, 82 S. E. (2d) 410; 99 C. J. S., Workmen's Compensation, § 184 (a). We have had only a few cases of this nature. In *Branch v. Pacific Mills,* 205 S. C. 353, 32 S. E. (2d) 1, the employee suffered a cerebral hemorrhage while at work in the mill. In *Radcliffe v. Southern Aviation School,* 209 S. C. 411, 40 S. E. (2d) 626, claimant suffered a stroke while working as a guard. Compensation was denied in each of these cases because there was no evidence that the stroke was brought about by any undue exertion or strain or that it had any causal connection with the employee's working conditions.

We think the rules laid down in the heart cases should be applied to claims for disability or death resulting from a cerebral thrombosis. It is not perceived that there is any funamental difference in principle between a case where disability results from a coronary thrombosis and one where it results from a cerebral thrombosis.

We think the activities of claimant during the week or two preceding his stroke were sufficient to reasonably support a conclusion of unusual strain and exertion within the meaning of the cases hereinabove cited. While some of the activities were of a nature usually performed by a game warden, they were continued uninterruptedly over an unusual length of time and some of them involved extraordinary exertion for a game warden. We agree with the Circuit Judge that while the evidence "shows that the type of activity in which claimant was engaged was common to his position as game warden, it further abundantly shows that the hours in which he was so employed were unusually long, the work environment was unusually difficult, and that there were several incidents in which claimant, because of

unusual circumstances, greatly over-exerted himself in the performance of his duties."

The following cases, among others, fully sustain the above conclusion: *Sweatt v. Marlboro Cotton Mills, supra,* 206 S. C. 476, 34 S. E. (2d) 762; *Ricker v. Village Management Corporation,* 231 S. C. 47, 97 S. E. (2d) 83. Also, see *Colvin v. E. I. du Pont de Nemours & Co.,* 227 S. C. 465, 88 S. E. (2d) 581. The facts in the recent case of *Sims v. South Carolina State Commission of Forestry, supra,* 235 S. C. 1, 109 S. E. (2d) 701, are distinguishable. In that case, the deceased, who was employed as a watchman for the Forestry Commission, was required, among other duties, to climb the steps of a fire tower twice each day. After doing so on one occasion, he suffered a heart attack shortly after eating supper. We held that although the exertion required in climbing this tower might have been too much for this particular employee due to his physical condition, it was the very thing that he had been doing for sixteen years and, therefore, did not constitute unusual strain or exertion in his employment.

There remains the question of whether claimant has shown that the unusual strain and exertion heretofore described was causally related to the cerebral thrombosis which he suffered. The medical testimony here fully meets the requirements laid down in the case of *Cross v. Concrete Materials, Inc.,* S. C., 114 S. E. (2d) 828, and cases therein cited. The two local physicians expressed the unqualified opinion that this unusual strain and exertion precipitated the cerebral thrombosis. It is true that there is evidence that claimant had a pre-existing vascular disorder but it is well settled "that where a latent or quiescent weakened, but not disabling, condition resulting from disease is by accidental injury in the course and scope of employment aggravated or accelerated or activated, with resulting disability, such disability is compensable." *Gordon v. E. I. du Pont de Nemours & Co.,* 228 S. C. 67, 88 S. E. (2d) 844.

Affirmed.

STUKES, C. J., and TAYLOR, LEGGE and MOSS, JJ., concur.