18857

Mrs. Irene S. McWHORTER, Respondent, v. SOUTH CAROLINA DEPARTMENT OF INSURANCE and State Workmen's Compensation Fund, Appellants.

(165 S. E. (2d) 365)

*Messrs. Daniel R. McLeod, Attorney General, and James C. Anders, Assistant Attorney General, of Columbia, for Appellants,*

*Messrs. Marchant, Bristow & Bates,* of Columbia, *for Respondent,*

January 14, 1969.

*Per Curiam.*

This is an appeal from an order of the Circuit Court, which will be reported herewith, affirming the opinion and an award of the South Carolina Industrial Commission in a Workmen's Compensation case.

The sole question for determination is whether there was any competent evidence to support the factual findings of the Industrial Commission that the deceased employee suffered a fatal heart attack arising out of and in the course of his employment as a result of overexertion in the performance of his duties due to unusual or extraordinary conditions and circumstances in his employment.

We have examined the record in this case and the order of the lower court in the light of the question posed and have concluded that a proper disposition of this case was made. In addition to the evidence of overexertion on the part of the employee, reviewed in the circuit court order, the medical evidence was to the effect that his heart attack was most probably caused by such overexertion.

There being competent evidence supporting the factual findings of the Commission, the judgment below is affirmed.

The ORDER OF JUDGE GRIMBALL requested to be reported follows:

This matter comes before me by way of appeal by the Defendants-Appellants from an order of the South Carolina Industrial Commission affirming the opinion and award of Commissioner Paul M. MacMillan, Jr., granting the Claimant benefits under the South Carolina Workmen's Compensation Act for the death of her husband.

In this case, the deceased employee suffered a heart attack and died. It is stipulated that his death occurred in the course of his employment. He had no previous history of a heart condition.

At the time of his death, the deceased was employed in Columbia as an investigator by the South Carolina Department of Insurance. The uncontradicted testimony showed that the deceased normally worked approximately thirty-six (36) hours per week, from nine (9:00) to five (5:00) each day, five (5) days per week, with one (1) hour for lunch, and a fifteen (15) minute coffee break in the morning and in the afternoon. His normal working conditions involved very little overtime work and very little travel.

While so employed, the deceased was required to investigate and aid in the preparation for trial of an extremely involved and complicated conspiracy case, to be tried in Greenville, involving a large number of defendants and requiring the personal interviewing of, and conferences with a large number of witnesses from all over the State. In the last ten (10) days before the trial, he traveled by automobile, driving most of the way, over fifteen hundred (1500) miles, for the purposes of these interviews and conferences. For the last ten (10) days, up until approximately 1:00 o'clock P. M. on the day of his death, he worked in the preparation for this trial more than one hundred twenty-one (121) hours. Because of the time element involved, accusations by

the defendants against him, and the importance of the case, the deceased was operating during all this time under conditions of extreme pressure, emotional strain and worry. The trial was to commence on Monday, and on the Saturday before the trial, normally a day off, the deceased worked for approximately eleven (11) hours. On the Sunday before the trial, also normally a day off, he worked about twelve (12) hours, from about 12:30 P. M. until about 12:30 A. M. the following Monday morning. On Monday morning, he arose about 3:30 A. M. and drove to Greenville, stopping on the way in Leesville to pick up a witness who had requested transportation. Upon arriving in Greenville, he proceeded to the Solicitor's office and participated in a conference with the Solicitor and others from 7:00 A. M. until about 9:00 A. M., after which he proceeded to the Court room and assisted in the trial until the Court recessed at about 12:35 P. M. At that time, he assisted the Solicitor and another investigator in carrying voluminous files and records to the Solicitor's Office in the Court House, then walked down three flights of stairs in the Court House, and shortly after emerging from the building he suffered a heart attack and died.

Appearing as witnesses for Claimant were the deceased's immediate superior, Mr. Asbury Shorter, the Solicitor for the Thirteenth Circuit, Mr. B. O. Thomason, Jr., and a fellow investigator with the Insurance Department, Mr. James E. Perry. All of these witnesses testified as to the highly unusual conditions under which this investigation was conducted as well as to the extraordinary strain and long hours in connection with it, which were very unusual for this line of work.

Thus, Mr. Shorter testified that, "In my eighteen (18) years of law enforcement, it was one of the most complicated cases" that he had ever seen (Tr. p. 24). Mr. Shorter also testified: "I couldn't put a new man in Mr. McWhorter's place, I knew that I was overworking him, but I couldn't put a new man in cold to do it. And, in fact, I couldn't have

done it myself. And, therefore, Mr. McWhorter being very conscientious never complained about the overwork. * * *" (Tr., p. 27).

Solicitor Thomason testified that this case was "unusual. Unusual in every sense of the word." (Tr. p. 69), and that all of the investigators "were under unusual strain or pressure." (Tr., p. 61.)

Mr. Perry stated that in normal cases the investigators were never pushed for time as they were in this one (Tr., p. 79) and that they had never before had to work excessive hours (Tr., pp. 102-103). He said that the conditions of employment in this case were both "unusual" and "extraordinary." (Tr., p. 97).

Under this state of facts, the Hearing Commissioner found as a fact that the deceased "suffered a fatal heart attack arising out of and in the course of his employment with the defendant-employer as the result of overexertion in the performance of his duties due to unusual and extraordinary conditions and circumstances in his employment."

Upon review, the Full Commission adopted the Hearing Commissioner's Opinion and Award in its entirety, including the above quoted finding of fact.

The Supreme Court of South Carolina has considered the question of compensation in cases of heart attacks many times in the past. One of the most recent cases is that of *Walsh v. United States Rubber Co.,* 238 S. C. 441, 120 S. E. (2d) 685 (1961). In that case, the Court quoted with approval from the case of *Kearse v. South Carolina Wildlife Resources Dept.,* 236 S. C. 540, 115 S. E. (2d) 183 (1960), as follows:

"* * * A determination of this question necessitates a review of the cases where disability or death of an employee results as a consequence of exertions in the performance of his duties. It is now well settled in this State that a coronary occlusion or thrombosis suffered by an employee constitutes

a compensable 'accident' if it is induced by unexpected strain or overexertion in the performance of the duties of his employment or by unusual and extraordinary conditions in the employment. *Green v. City of Bennettsville*, 197 S. C. 313, 15 S. E. (2d) 334; *Willis v. Aiken County*, 203 S. C. 96, 26 S. E. (2d) 313; *Windham v. City of Florence*, 221 S. C. 350, 70 S. E. (2d) 553. This is true even though there is a pre-existing pathology which may have been a contributing factor. *Sweatt v. Marlboro Cotton Mills*, 206 S. C. 476, 34 S. E. (2d) 762; *Raley v. City of Camden*, 222 S. C. 303, 72 S. E. (2d) 572. And the right to compensation is not affected by the fact that the unusual or excessive strain which precipitates the heart attack occurs while the employee is performing work of the same general type as that in which he is regularly involved. *Sweatt v. Marlboro Cotton Mills, supra,* 206 S. C. 476, 34 S. E. (2d) 762; *Ricker v. Village Management Corporation*, 231 S. C. 47, 97 S. E. (2d) 83. The phrase 'unusual or excessive strain' used in many cases, is not so limited in its meaning as to include only work of an entirely different character from that customarily done."

In the *Walsh* case, recovery was allowed by showing that the claimant's normal and planned day was interrupted and "broken up" which worried him, and as a result he had to work harder in order to complete the work he had planned for that day.

There are two South Carolina cases almost "on all fours" with the instant case. They are *Kearse v. South Carolina Wild Life Resources Dept.,* 236 S. C. 540, 115 S. E. (2d) 183; and *Wynn v. Peoples Natural Gas Co. of South Carolina,* 238 S. C. 1, 118 S. E. (2d) 812.

In the *Kearse* case, it was held that a cerebral thrombosis suffered by an employee constituted a compensable accident where the evidence showed that for several days prior to the attack the claimant had worked sixteen (16) to eighteen (18) hours a day as a game warden, far in excess of his

usual hours of work, and during that period underwent physical exertion in dragging boats and pushing an automobile. In the *Wynn* case, it was held that a heart attack suffered by a general manager and supervisor of the operations of a gas company constituted a compensable accident where the evidence showed that while his ordinary working day was about eight and one-half (8½) hours, prior to the attack, the claimant was required to work, during a period of conversion from propane to natural gas, sixteen (16) hours per day in order to perform the extra duty of supervising the conversion work.

Here, the claimant normally worked only about thirty-six (36) hours a week, with very little overtime and very little travel, and was normally not subjected to any emotional or physical strain, and certainly not over a long period of time. In contrast to what he normally did, the evidence shows that immediately prior to his heart attack, claimant worked extremely long hours, including on the weekends, on ordinary off days, eleven and twelve hours per day, drove great distances, and was subjected to extraordinary and unusual strain, emotional pressure and worry. This was not an expected, seasonal increase in work, but was in every way unusual and extraordinary. Even the decedent's own supervisor knew that he was being overworked at this time.

Cases in which compensation for a heart attack has been denied are easily distinguishable from the one at bar.

Thus, in *Black v. Barnwell County*, 243 S. C. 531, 134 S. E. (2d) 753 (1964), the deceased had been Sheriff and Jailer of Barnwell County, with a previous history of a heart condition, and the Court found that his ordinary and usual duties consisted of climbing the stairs to the second floor of the jail and that there were no unusual or extraordinary circumstances existing in his employment at the time of his heart attack. In the case of *Pellum v. W. C. Chaplin Transport*, 249 S. C. 348, 154 S. E. (2d) 432 (1967), the Court held that it was usual for the driver of a

petroleum truck to have additional work during cold weather and less work in other seasons, and this was to be expected, so that no recovery was allowed where a truck driver worked his usual long hours during a winter season. Both of these cases are, of course, quite different from the case at bar where the long hours, strain and exertion were unusual and extraordinary, and were so testified to by all of the witnesses presented.

The *Pellum* case is deserving of particular comment because of the stress laid upon it by counsel for appellants. In the *Pellum* case, the Court specifically pointed out that the decedent had been employed for eighteen (18) years as a truck driver engaged in the transporting of petroleum products, and that "it is *usual* for the driver of a petroleum truck to have additional work during cold weather and less work in other seasons, and this is to be expected." (Emphasis added.) From this case, counsel for appellants attempt to draw the analogy that it would be usual for an investigator to work more on some cases than on others, and say that "this was a condition of his employment and that long hours as such cannot be twisted into an accident."

In this contention, counsel for appellants ignore the doctrine laid down in numerous cases by the Supreme Court of South Carolina that "the right to compensation is not affected by the fact that the unusual or excessive strain which precipitates the heart attack occurs while the employee is performing work of the same general type as that in which he is regularly involved," and that, "the phrase 'unusual or excessive strain' used in many of the cases, is not so limited in its meaning as to include only work of an entirely different character than that customarily done." *Walsh v. United States Rubber Co.,* 238 S. C. 441, 120 S. E. (2d) 685, and cases cited, *supra.*

In the instant case, the decedent was engaged in an unusual investigation, under extraordinary conditions of employment, with unusually long hours, great mental stress

and strain, emotional involvement, lack of sleep, time pressure, physical exertion, and other extraordinary conditions of employment at the time of his attack. This was not an expected or seasonal change in routine, but was unusual and extraordinary. Therefore, this case comes squarely within the doctrine laid down in *Walsh, Kearse,* and *Wynn,* and recovery should be allowed.

Here, the true question is "whether or not there is any competent evidence to support the findings of the Industrial Commission", and it cannot be said that such findings are without evidentiary basis, and, in fact, it appears that they are amply supported by the evidence. Since there is competent evidence to support the findings of the fact-finding body, the findings are conclusive, and the decision of the Industrial Commission should be upheld. It is, therefore,

Ordered that the Opinion and Award of the South Carolina Industrial Commission, filed March 29, 1968, be, and the same is hereby, affirmed.