544 S.E.2d 842

**Perry W. LOCKRIDGE, Appellant,**

v.

**SANTENS OF AMERICA, INC., Employer and South Carolina Chamber Fund/Sedgwick James of the Carolinas, Carrier, Respondents.**

No. 3298.

Court of Appeals of South Carolina.

Heard Oct. 12, 2000.

Decided Feb. 20, 2001.

Rehearing Denied April 23, 2001.

512

Richard E. Thompson, Jr., of Thompson & King, of Anderson, for appellant.

Wm. Douglas Gray and Reginald M. Gay, both of Watkins, Vandiver, Kirven, Gable & Gray, of Anderson, for respondents.

STILWELL, Judge:

In a decision affirmed by the workers' compensation commission and the circuit court, the single commissioner found Perry W. Lockridge was not entitled to benefits, concluding his heart attack was not an injury by accident arising out of and in the course of his employment. Lockridge appeals. We affirm.

## BACKGROUND

In February 1994, Santens of America, a manufacturer of towels, hired Lockridge as a lead man on the weekend shift. A lead man is responsible for mixing dyes and chemicals and

operating the dye machine. Operating the dye machine requires the lead man to lift buckets and bags weighing fifty to fifty-five pounds each.

In November 1994, Lockridge experienced heart problems requiring angioplasty. By December 1994, Lockridge had returned to work as a lead man on the weekend shift. Between January and June of 1995, the plant closed eleven weeks due to a slowdown in production. In July 1995, Lockridge was promoted to department head of the dyehouse, a weekday job that also required him to report to work on Saturday. In this position, Lockridge supervised the lead men, performed inventory counts, and checked the dye colors. Lockridge's job essentially consisted of office work, and he no longer lifted buckets and bags of chemicals.

On October 14, 1995, Lockridge planned to go to the plant for a shift change and to check the dye. The lead man scheduled for the 11:00 a.m. to 11:00 p.m. shift could not work, and Lockridge was unable to get a replacement lead man to report until 3:00 p.m. Lockridge had decided to close down the dyeing operation between 11:00 a.m. and 3:00 p.m., but the plant manager persuaded Lockridge to fill in as the lead man during that time frame.

Lockridge worked the four hour shift for the dyeing operation utilizing four vats and two dryers. When Lockridge worked as a lead man prior to his promotion, he operated only three vats and one dryer. Lockridge lifted between 1600 and 3000 pounds of chemicals during the shift.

As he worked, Lockridge became extremely tired, began sweating, and developed pain in his neck and jaw. He also experienced shortness of breath and soreness between his shoulders. Although Lockridge originally intended to stay at the plant until 5:00 p.m., the onset of these symptoms caused him to return home as soon as the replacement lead man arrived at 3:00 p.m.

Throughout the evening, Lockridge continued to experience symptoms and eventually was transported to the emergency room at Anderson Area Medical Center where he was diagnosed as having sustained a heart attack. Lockridge was then transferred to Greenville Memorial Hospital where he under-

went quadruple bypass heart surgery. Lockridge was fifty-eight years old at the time of the heart attack.

Following his operation, Lockridge returned to work at Santens in various capacities but was terminated in December 1996 for reasons not involved here and has not been employed since.

In denying Lockridge's claim, the single commissioner concluded he did not suffer an injury by accident arising out of and in the course of employment. Moreover, the commissioner found Lockridge's heart attack was not caused or induced by unexpected strain or overexertion in the performance of his job duties or by unusual or extraordinary conditions in his employment on October 14, 1995. The full commission determined that all of the single commissioner's findings of fact and rulings of law were correct as stated, affirmed the hearing commissioner, and adopted his decision as its own. The circuit court affirmed the full commission.

## SCOPE OF REVIEW

The Administrative Procedures Act establishes the standard of review for decisions by the South Carolina Workers' Compensation Commission. *Lark v. Bi-Lo, Inc.,* 276 S.C. 130, 135, 276 S.E.2d 304, 306 (1981). Any review of the commission's factual findings is governed by the substantial evidence standard. *Smith v. Squires Timber Co.,* 311 S.C. 321, 325, 428 S.E.2d 878, 880 (1993). The "possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Palmetto Alliance, Inc. v. South Carolina Pub. Serv. Comm'n,* 282 S.C. 430, 432, 319 S.E.2d 695, 696 (1984). Substantial evidence is evidence that, in viewing the record as a whole, would allow reasonable minds to reach the same conclusion that the full commission reached. *Miller v. State Roofing Co.,* 312 S.C. 452, 454, 441 S.E.2d 323, 324–25 (1994); *Gray v. Club Group, Ltd.,* 339 S.C. 173, 183, 528 S.E.2d 435, 440 (Ct.App.2000).

Furthermore, neither this court nor the circuit court may substitute its judgment for that of the agency as to the weight of the evidence on questions of fact but may reverse if the decision is affected by an error of law. *See* S.C.Code Ann.

§ 1–23–380(A)(6) (Supp.2000); *Gibson v. Florence Country Club,* 282 S.C. 384, 386, 318 S.E.2d 365, 367 (1984); *Gibson v. Spartanburg Sch. Dist. No. 3,* 338 S.C. 510, 516, 526 S.E.2d 725, 728 (Ct.App.2000). *See also Oglesby v. Greenville YWCA,* 250 S.C. 490, 494, 158 S.E.2d 907, 909 (1968) ("Under our workmen's compensation law the Commission sits in lieu of a jury and neither the Circuit Court nor this Court may interfere with its findings of fact unless there is an absence of evidence to sustain the findings of the Commission.").

## DISCUSSION

### I. Expert Medical Testimony

#### A. Testimony of Dr. Gaucher

■ Lockridge argues the commission erred by misconstruing Dr. Jay Gaucher's deposition testimony as to the cause of Lockridge's heart attack. We disagree.

Doctor Gaucher, a cardiologist, first treated Lockridge for the heart attack on October 18, 1995. Doctor Gaucher testified that, according to a cardiac catheterization report on Lockridge when he was treated at Anderson Area Medical Center, Lockridge had multi-vessel heart disease with total occlusion of his left anterior descending artery and a ninety-nine percent blockage in his right coronary artery with angiographic evidence of ruptured plaque in that artery. Doctor Gaucher explained that plaque is cholesterol and when it ruptures or cracks, the plaque causes clots to form in the artery which, in turn, gives rise to heart attacks. Doctor Gaucher testified the plaque rupture likely occurred at the time of the onset of Lockridge's symptoms.

During direct examination regarding causation, Dr. Gaucher testified that the direct cause of Lockridge's heart attack was plaque rupture in the right coronary artery. In response to the inquiry if he had an opinion whether the plaque rupture was induced or caused by unexpected strain or overexertion in Lockridge's job, Dr. Gaucher answered:

Well, I don't—All I can say is that plaque rupture is very unpredictable. Coronary artery disease is a chronic condition and very unpredictable. Plaque rupture can occur at any time. In fact it quite often happens at rest, most

commonly in the early morning hours, and I don't think that we really understand or know the precipitance of plaque rupture. But it's a chronic . . . disease, and, and it's unpredictable and plaque rupture can occur. So I, I don't know if there's a direct—I don't, don't know if a direct implication can be made with any certainty.

Upon further questioning as to whether a causal connection existed between Lockridge's employment and the heart attack, Dr. Gaucher responded:

So I did not question [Lockridge] about the—his activities at the time of his symptoms and so forth. So it's in some ways maybe a little bit unfair to ask me that particular question. But what I know, again, from heart disease is that plaque rupture is unpredictable and can occur at any time, and we don't know the precipitance or understand the precipitance. Heart attacks most often occur without physical exertion.

Doctor Gaucher concluded by unequivocally stating that he could not give an opinion with any degree of medical certainty because of the unpredictable nature of the process.

Lockridge argues the inference to be drawn from Dr. Gaucher's testimony is Lockridge's heart attack directly resulted from a plaque rupture which occurred when he began experiencing symptoms while overexerting himself in working as a lead man. However, the single commissioner concluded otherwise, summarizing "Dr. Gaucher testified that he could not say within a reasonable degree of medical certainty that [Lockridge's] heart attack was causally related to the physical activity engaged in by [Lockridge] on October 14, 1995." The full commission adopted the findings of the commissioner.

## B. Testimony of Dr. Walker

Lockridge relies on the deposition testimony of Dr. William Walker in arguing there is no substantial evidence in the record to support the commission's findings regarding causation. Doctor Walker, a pulmonary internist, first treated Lockridge in 1989 for a physical examination and each year thereafter for several years. Doctor Walker's partner, Dr. Samuel Burnett, admitted Lockridge to the hospital for the October 1995 heart attack. During direct examination regard-

518

ing the cause of Lockridge's heart attack, Dr. Walker testified as follows:

> Attorney: Alright (sic), sir. Based on the patient's history that he gave you, are you aware of the case of the cause of the heart attack which he had on October 15th of '95?
>
> Walker: I heard that it had to do with something about his job, that he was doing something different. He was home and they called him in. He had to do something he wasn't used to or something. And he tried to help them out and he didn't do well after that.
>
> Attorney: Was that information related to you by Mr. Lockridge?
>
> Walker: Yes.

Thereafter, in response to a hypothetical question posed by Lockridge's attorney, which was objected to by Santens' attorney, Dr. Walker stated he "would think" to a reasonable degree of medical certainty that Lockridge's heart attack was causally related to Lockridge lifting the bags of chemicals.

Lockridge argues Dr. Walker's testimony is uncontradicted and, therefore, the commission erred in concluding the heart attack was not caused by Lockridge's physical exertions on the job. We disagree.

 While Dr. Walker may have attributed the cause of Lockridge's heart attack to overexertion at work, Dr. Gaucher either would not or could not. Thus, to the extent Dr. Gaucher's testimony contradicts Dr. Walker's testimony, the commission was free to weigh the conflicting evidence accordingly. *Sharpe v. Case Produce, Inc.,* 336 S.C. 154, 160, 519 S.E.2d 102, 105 (1999) ("Where there is a conflict in the evidence, the Commission's findings of fact are conclusive."); *see also Stokes v. First Nat'l Bank,* 306 S.C. 46, 50, 410 S.E.2d 248, 251 (1991) (acknowledging that despite conflicting evidence, either of different witnesses or of the same witness, a finding of fact by the commission is conclusive). The final determination of witness credibility and the weight to be accorded evidence is reserved to the full commission, and it is not the task of the court to weigh the evidence as found by the commission. *Sharpe,* 336 S.C. at 160, 519 S.E.2d at 105; *Muir v. C.R. Bard, Inc.,* 336 S.C. 266, 282, 519 S.E.2d 583, 591 (Ct.App.1999). Furthermore, "[e]xpert medical testimony is

designed to aid the Commission in coming to the correct conclusion; therefore, the Commission determines the weight and credit to be given to the expert testimony. Once admitted, expert testimony is to be considered just like any other testimony." *Tiller v. Nat'l Health Care Ctr. of Sumter*, 334 S.C. 333, 340, 513 S.E.2d 843, 846 (1999) (citations omitted). Given the conflicting testimony as to the precipitation of Lockridge's heart attack and our scope of review, we find substantial evidence in the record to support the commission's findings regarding causation.

## II. Lockridge's Job Responsibilities

■ Lockridge also contends the commission erred in finding part of Lockridge's job responsibilities as department head included filling in for an absent lead man. We disagree.

Lockridge testified that after his promotion to department head, he was no longer routinely required to lift the buckets and bags of chemicals. Moreover, he testified he could not remember the former department head ever filling in for a lead man. In fact, Lockridge stated the plant closed down on occasions when a lead man was not present. However, he also testified that as department head he was expected to fill in for an absent lead man.

John Williams, Lockridge's successor as department head, testified that at the time of Lockridge's heart attack in 1995, the department head was expected to fill in for an absent lead man. He also stated that he had filled in for absent lead men, and it was an ordinary part of the department head's job. Williams did admit he could not remember Lockridge ever having to lift anything between the time he became department head until the day of his heart attack.

Based on the evidence presented regarding Lockridge's job history, the commissioner concluded the work Lockridge was performing at the time of his heart attack was "neither unusual in light of his regular job duties or extraordinary." The full commission adopted these findings.

■ As previously stated, our review of the commission's factual findings is governed by the substantial evidence standard. *Smith*, 311 S.C. at 325, 428 S.E.2d at 880. Where there is conflicting testimony, the commission's findings of fact are

conclusive. *Brayboy v. Clark Heating Co.*, 306 S.C. 56, 58, 409 S.E.2d 767, 768 (1991). Accordingly, we find no error in the commission's finding that Lockridge's ordinary job responsibilities included filling in for an absent lead man.

Lockridge also argues the commission erred in holding that under S.C.Code Ann. § 42–1–160 (Supp.2000), and case law, the test for compensability due to heart attacks caused by unexpected strain or overexertion or by unusual and extraordinary conditions of employment is based on the responsibility of an employee, rather than the physical effort the employee generally performs. Lockridge contends even if the test is based on an employee's responsibilities, the commission erred in failing to recognize Lockridge met the test. We disagree.

■ The general rule is that a heart attack is compensable as a worker's compensation accident if it is induced by unexpected strain or overexertion in the performance of the duties of claimant's employment or by unusual and extraordinary conditions of employment. *Hoxit v. Michelin Tire Corp.*, 304 S.C. 461, 464, 405 S.E.2d 407, 409 (1991). Various extreme conditions have been considered sufficient to support a finding that an accident resulted from unexpected strain or overexertion or from unusual and extraordinary conditions of employment. *See, e.g., Stokes,* 306 S.C. 46, 410 S.E.2d 248 (extreme increase in work hours coupled with increased responsibilities resulting in nervous breakdown); *Powell v. Vulcan Materials Co.,* 299 S.C. 325, 384 S.E.2d 725 (1989) (unexpected, serious altercation with employee's supervisor resulting in mental disorder); *Holley v. Owens Corning Fiberglas Corp.,* 301 S.C. 519, 392 S.E.2d 804 (Ct.App.1990) (climb of an eighty-seven foot ladder in extreme heat resulting in heart attack).

■ However, where a claimant cannot prove the heart attack was induced by unexpected strain or overexertion in the performance of employment duties or by unusual and extraordinary conditions of employment, there is no injury by accident compensable under section 42–1–160. *See Hoxit,* 304 S.C. at 464–65, 405 S.E.2d at 409 (applying the substantial evidence standard of review in affirming the commission's factual finding that a claimant's heart attack was not compensable since it did not result from unexpected strain or overexertion or unusual and extraordinary conditions of his employ-

ment); *Jennings v. Chambers Dev. Co.*, 335 S.C. at 258–59, 516 S.E.2d at 458–59 (Ct.App.1999) (upholding the commission's factual finding that a claimant's ruptured aneurysm was not a work-related injury where there was no evidence anything unusual or unexpected, requiring abnormal exertion, occurred on the day of employee's death).

Lockridge cites several cases in his brief in support of his argument that the case law draws a distinction between the physical effort the employee generally performs and the employee's usual job responsibility when examining what is an unexpected strain or unusual and extraordinary conditions of employment resulting in a heart attack.[1] However, the cases on which Lockridge relies do not seem to draw such a fine distinction. Instead, these cases suggest that our standard of review governs the outcome on appeal of these factually driven cases.[2]

■ There is conflicting evidence in the record as to Lockridge's responsibility in filling in for an absent lead man. Moreover, the testimony of Dr. Gaucher and Dr. Walker conflicts as to whether Lockridge's heart attack resulted from

---

**1.** In support of his argument, Lockridge relies on *Canady v. Charleston County Sch. Dist.*, 265 S.C. 21, 216 S.E.2d 755 (1975) (affirming full commission's factual finding that an employee, who had been required to work two nights a week in addition to his normal janitorial duties, had suffered a heart attack that was induced by unexpected strain and overexertion in the performance of his employment duties); *McWhorter v. South Carolina Dep't of Ins.*, 252 S.C. 90, 165 S.E.2d 365 (1969) (affirming full commission's factual finding that an employee, who experienced an extreme increase in work hours, great mental stress, lack of sleep, time pressure and physical exertion on the job, had suffered a heart attack that was induced by overexertion in the performance of his duties due to unusual or extraordinary conditions in his employment); *Ricker v. Village Mgmt. Corp.*, 231 S.C. 47, 97 S.E.2d 83 (1957) (affirming the full commission's factual finding that an employee, a bus driver who experienced considerable physical strain in making a sharp turn during heavy traffic on a hot day, had experienced unusual exertion or strain during the course of his employment, which aggravated the employee's heart condition and resulted in a heart attack).

**2.** *Canady*, 265 S.C. at 25, 216 S.E.2d at 757 (refusing to reverse the decision of the commission since there was competent evidence to support its factual findings); *McWhorter*, 252 S.C. at 98, 165 S.E.2d at 368 (same); *Ricker*, 231 S.C. at 55, 97 S.E.2d at 87 (finding evidence to support the factual findings of the commission).

unexpected strain or overexertion or from unusual and extraordinary conditions of employment. In resolving these factual issues, the commissioner concluded Lockridge's "heart attack was not caused or induced by unexpected strain or overexertion in the performance of [his] duties of his employment [n]or by unusual and extraordinary conditions in the employment. . . ." The commission adopted the commissioner's findings. Where there is a conflict in the evidence, the commission's findings of fact are conclusive. *Sharpe,* 336 S.C. at 160, 519 S.E.2d at 105; *Hoxit,* 304 S.C. at 465, 405 S.E.2d at 409. There is substantial evidence in the record to support the commission's findings. Accordingly, the order of the circuit court order is

**AFFIRMED.**

HOWARD and SHULER, JJ., concur.