THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS 
 PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Charles L. Eckartz, Claimant, Appellant,
v.
Stone Creek Cove Homeowners Association, Inc., Employer, and Cincinnati Insurance Companies, Carrier,
Respondents.
 
 
 

Appeal From Anderson County
 Alexander S. Macaulay, Circuit Court Judge

Unpublished Opinion No. 2006-UP-339
Submitted September 1, 2006  Filed October 3, 2006

AFFIRMED

 
 
 
Larry A. Welborn, of Anderson, for Appellant.
William R. Harbison, of Columbia, for Respondents.
 
 
 

PER CURIAM: Charles Eckartz appeals the circuit courts decision affirming the Workers Compensation Commissions (Commission) order finding Stone Creek Cove Homeowners Association, Inc., and Cincinnati Insurance Companies (hereinafter referred to jointly as Stone Creek) are entitled to stop paying disability benefits related to Eckartzs headaches.
FACTS
On July 4, 2001, while working at a restaurant owned by Stone Creek, Eckartz slipped and fell sustaining injuries to his right and left elbows.  Stone Creek agreed to pay Eckartz temporary disability benefits for the elbow injuries.  The single commissioner found Eckartzs elbows reached maximum medical improvement by November 11, 2001.  This finding was based on medical records from two treating physicians and Eckartzs own testimony.  
On January 10, 2002, Eckartz began experiencing severe headaches, which he attributed to a reaction to pain medication prescribed to treat his elbows.
Eckartz contends Stone Creek should continue paying disability benefits to treat his headache problems.  
On April 16, 2003, the single commissioner ordered Stone Creek to provide an independent medical examination to discern whether Eckartzs headaches were causally related to his work injury.  The commissioner also ordered Stone Creek to continue paying temporary benefits pending her determination as to whether Eckartzs headaches were casually related to his work injury.  
Dr. Paul Brill performed an independent medical exam of Eckartz.  Among other things, he administered a CT scan to determine the cause of Eckartzs headaches.  Unfortunately, this scan was not optimal because the images it produced were degraded due to Eckartzs movement during the procedure.  Apparently, Eckartz had a kidney stone that caused him too much discomfort to remain still.  On August 27, 2002, Dr. Brill stated he could not say with any degree of certainty that [Eckartzs] headaches are causally related to his work injury.  Dr. Brill recommended an MRI of the brain, an MRA of the Circle of Willis, and a complete ophthalmologic exam.[1]  As of September 4, 2003, after an MRI and an MRA exam, Dr. Brill was unable to give a decisive medical opinion as to the cause of Eckartzs headaches and reiterated his recommendation for a complete ophthalmologic exam. 
Eckartz subsequently moved to southern Florida where he was scheduled for an eye exam in Fort Myers, Florida on December 23, 2003. Eckertz called the ophthalmologists office on December 17, 2003 to reschedule that appointment for January 22, 2004.  Eckartz did not attend the appointment.  
Eckartz wrote a letter to the commissioner explaining he rescheduled due to a conflicting medical appointment.  He also claimed he did not know about the December 23, 2003 appointment until the day before.  Further, Eckartz asserted he did not go to the January 22, 2004 appointment because he was informed the commissioner stopped the test, and he could not personally afford the appointment.  Eckartz claimed part of his difficulties was due to his lack of transportation and his mail coming to him in convoluted ways. 
On October 28, 2003, the single commissioner found Dr. Brills statements regarding causation to be incomplete and asked for a more complete analysis by Dr. Brill once the eye exam was performed.  The commissioner then found Eckartzs reasons for missing his eye appointments were not credible.  The commissioner concluded Stone Creek was entitled to stop paying benefits as of September 26, 2002, because Eckartz refused treatment, and Stone Creek was entitled to a credit for any overpayment of disability benefits.  
Eckartz timely appealed the single commissioners ruling to an appellate panel of the Workers Compensation Commission.  The appellate panel affirmed the single commissioners ruling.  Eckartz appealed that decision to the circuit court, which affirmed the panel.  Eckartz now appeals the circuit courts decision.
STANDARD OF REVIEW
The Administrative Procedures Act applies to appeals from decisions of the Commission.  Lark v. Bi-Lo, Inc., 276 S.C. 130, 134-135, 276 S.E.2d 304, 306 (1981).  In an appeal from the Commission, neither this Court nor the circuit court may substitute its judgment for that of the Commission as to the weight of the evidence on questions of fact, but may reverse where the decision is affected by an error of law.  Corbin v. Kohler Co., 351 S.C. 613, 617, 571 S.E.2d 92, 95 (Ct. App. 2002).  Any review of the [C]ommissions factual findings is governed by the substantial evidence standard.  Lockridge v. Santens of Am., Inc., 344 S.C. 511, 515, 544 S.E.2d 842, 844 (Ct. App. 2001).  Accordingly, we limit review to deciding whether the Commissions decision is unsupported by substantial evidence or is controlled by some error of law.  Corbin, 351 S.C. at 617, 571 S.E.2d at 95.  Substantial evidence is evidence that, in viewing the record as a whole, would allow reasonable minds to reach the same conclusion that the full commission reached.  Lockridge, 344 S.C. at 515, 544 S.E.2d at 844.  
LAW/ANALYSIS
Eckartz argues the circuit court erred in affirming the commissions finding that he failed to provide substantial evidence causally relating his headaches to his work injuries and that he failed to provide a credible reason for not attending his medical appointments.  We disagree.
The Commissions appellate panel relied, in part, upon reports from Dr. Brill, who performed an independent medical evaluation on Eckartz.  Dr. Brill noted that Eckartzs MRI and MRA were normal and showed no evidence of an intracranial aneurysm.  Dr. Brill further opined that: 

[i]t would be somewhat atypical to develop sudden and such severe and persistent migraine headaches without some provoking factor . . . [but despite the normal MRI and MRA] his headaches could, in part, be due to his hypertension, and again, I feel it is important that we rule out any orbital pathology and assess his intra-ocular pressures with a complete ophthalmologic evaluation.

As of August 27, 2002, Dr. Brill could not say with any degree of certainty that [Eckartzs] headaches [were] causedly (sic) related to his work injury from 7-4-01.  
On Dr. Brills recommendation and upon the commissioners order, Stone Creek set up a complete ophthalmologic exam for Eckartz near his new home in Florida.  The Commissions appellate panel found Eckartz rescheduled this eye exam and failed to appear for his rescheduled appointment.  The panel based its finding on Eckartzs own statements and on the records provided by the ophthalmologists office.  
Finally, the panel found Eckartzs reasons for missing the rescheduled eye exam appointment were not credible.  It based its decision on records from the doctors office along with Eckartzs own testimony.  The record and testimony showed Eckartz knew about the appointments and simply failed to keep them.  
Eckartz failed to provide any evidence that his headaches were a result of either his injuries or a reaction to pain medication.  Further, Dr. Brills report found no evidence causally relating Eckartzs current condition to his work injury.  Therefore, the circuit court was correct in finding a lack of causal connection.  In addition, the record contains ample evidence, as noted above, to support the circuit courts ruling that Eckartzs reasons for missing his doctors appointments were not credible.
Eckartz also argues the circuit court misapplied South Carolina Code Ann. Section 42-15-60 (1985) in holding Eckartz must show he was justified in refusing treatment.  We disagree.
S.C. Code Ann. Section 42-15-60 states in pertinent part:

In case of a controversy arising between employer and employee, the Commission may order such further medical, surgical, hospital or other treatment as may in the discretion of the Commission be necessary. . . . The refusal of an employee to accept any medical, hospital, surgical or other treatment when provided by the employer or ordered by the Commission shall bar such employee from further compensation until such refusal ceases. . . .

Eckartz now claims he ceased his refusal and would like to be examined by the ophthalmologist and continue receiving temporary disability benefits.  However, a workers compensation award must not be based on surmise, conjecture, or speculation.  Lee v. Harborside Café, 350 S.C. 74, 81, 564 S.E.2d 354, 358 (Ct. App. 2002).  We find neither Eckartzs fall, nor a bad reaction to pain medication, could cause his alleged eye problem.  Dr. Brills report merely speculated that Eckartzs condition could be caused by hypertension or optical problems.  In fact, Dr. Brills September 4, 2003 report shows the results of the MRI and MRA were normal.
On September 4, 2003, Eckartzs condition was shown to be unrelated to his work injury of July 4, 2001.  The circuit court was justified in affirming the commissions finding that based on Dr. Brills opinion after the MRI and MRA, Eckartzs benefits should be terminated.  No evidence exists to the contrary.  Therefore, the circuit court did not err in affirming the commissioners decision to stop Eckartzs benefit payments.    
Accordingly, the circuit courts decision is
 AFFIRMED. [2]
GOOLSBY, BEATTY, and WILLIAMS, JJ., concur. 

[1] A CT scan, also known as a Cat scan, is a sectional view of the body constructed by computerized tomography.  MRI stands for magnetic resonance imaging.  An MRI produces computerized images of internal body tissues and is based on nuclear magnetic resonance of atoms within the body.  An MRA, or magnetic resonance angiography, is used to visualize the heart, blood vessels, or blood flow in the circulatory system.  The Circle of Willis is the complete ring of arteries at the base of the brain that is formed by the cerebral and communicating arteries.  See Medline Plus, at http://www.nlm.nih.gov/medlineplus/mplusdictionary.html.
[2] We decide this case without oral argument pursuant to Rule 215, SCACR.